PD-0577-15

PD-0577-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/12/2015 1:06:36 PM
Accepted 5/12/2015 4:23:47 PM
ABEL ACOSTA
CLERK

No._____

In the
Court of Criminal Appeals

————————◆————————

No. 01-12-01001-CR
In the Court of Appeals for the First District of Texas at Houston

————————◆————————

No. 1309538
In the 339th District Court of Harris County, Texas

————————◆————————

# ANTONIO RUIZ PEREZ

*Appellant*

V.

# THE STATE OF TEXAS

*Appellee*

————————◆————————

# STATE'S PETITION FOR DISCRETIONARY REVIEW

————————◆————————

FILED IN
COURT OF CRIMINAL APPEALS

May 12, 2015

ABEL ACOSTA, CLERK

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ERIC KUGLER**
Assistant District Attorney
Harris County, Texas
TBC No. 796910

**NATHAN MOSS**
Assistant District Attorney
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713-755-5826
FAX: 713-755-5809

*Counsel for Appellee*

ORAL ARGUMENT REQUESTED

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Eric Kugler** — Assistant District Attorney on appeal

**Nathan Moss; James Reed** — Assistant District Attorneys at trial

Appellant or criminal defendant:

**Antonio Ruiz Perez**

Counsel for Appellant:

**Joseph Salhab** — Counsel on appeal

**Jon Jaworski** — Counsel at trial

Trial Judge:

**Hon. J. Michael Wilkinson** — Presiding Judge

i

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES, AND COUNSEL..............................................i

INDEX OF AUTHORITIES................................................................ iii

STATEMENT REGARDING ORAL ARGUMENT...................................................v

STATEMENT OF THE CASE..............................................................vi

STATEMENT OF PROCEDURAL HISTORY ...................................................vi

STATEMENT OF FACTS ................................................................1

GROUNDS FOR REVIEW ...............................................................2

    A.   The lower court erred in finding that the challenge to the blood draw was preserved for appellate review because the appellant did not timely raise the warrant issue during the suppression hearing and never presented evidence of the lack of a search warrant...................................................2

    B.   The lower court erred in reversing the conviction based on *State v. Villarreal*, PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014), because this Court has granted rehearing in that case...........................2

    C.   The lower court erred in finding a constitutional violation in the blood draw when the officer made a reasonable mistake of law under *Heien v. N. Carolina*, 135 S. Ct. 530 (U.S. 2014). ...................................................2

ARGUMENT .........................................................................2

PRAYER FOR RELIEF................................................................12

CERTIFICATE OF SERVICE AND COMPLIANCE............................................13

# INDEX OF AUTHORITIES

**CASES**

*Amador v. State*,
221 S.W.3d 666 (Tex. Crim. App. 2007)..............................................................6

*Aviles v. State*,
385 S.W.3d 110 (Tex. App.—
San Antonio 2012, pet. ref'd)..................................................................10, 11

*Beeman v. State*,
86 S.W.3d 613 (Tex. Crim. App. 2002).........................................................10, 11

*Bell v. State*,
928 S.W.2d 566 (Tex. Crim. App. 1996)..............................................................8

*Evans v. State*,
14-13-00642-CR, 2015 WL 545702 (Tex. App.—
Houston [14th Dist.] Feb. 10, 2015, no. pet. h.) ...................................................10

*Gore v. State*,
451 S.W.3d 182 (Tex. App.—
Houston [1st Dist.] 2014, pet. filed)..............................................................9, 11

*Heien v. North Carolina*,
135 S.Ct. 530 (2014) ..............................................................................3, 8, 9, 11

*Missouri v. McNeely*,
133 S.Ct. 1552 (2013) ..................................................................................2, 9

*Perez v. State*,
01-12-01001-CR, 2014 WL 943126 (Tex. App.—
Houston [1st Dist.] Mar. 11, 2014, no pet.)....................................................... vi, 3

*Perez v. State*,
01-12-01001-CR, 2015 WL 1245469 (Tex. App.—
Houston [1st Dist.] Mar. 17, 2015, pet. filed) ...................................................... vi

*Phillips v. Bramlett*,
288 S.W.3d 876 (Tex. 2009)...............................................................................7

*Russell v. State*,
717 S.W.2d 7 (Tex. Crim. App. 1986)........................................................................6

*State v. Neesley*,
239 S.W.3d 780 (Tex. Crim. App. 2007)............................................................10, 11

*State v. Villarreal*,
PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014)......................7

*United States v. Riddle*,
5 Cranch 311, 3 L.Ed. 110 (1809) ........................................................................8

## STATUTES

TEX. TRANSP. CODE § 724.012(b) (West 2010)........................................................9

TEX. TRANSP. CODE § 724.012(b)(3)(A) (West 2010)..............................................9

TEX. TRANSP. CODE § 724.012(b)(3)(B) (West 2010)............................................11

## RULES

TEX. R. APP. P. 33.1(a) ...........................................................................................6

TEX. R. APP. P. 49.5 .............................................................................................. vi

TEX. R. APP. P. 66.3 .............................................................................................3

TEX. R. APP. P. 68.2 .............................................................................................. vi

TEX. R. APP. P. 68.4 (c).........................................................................................v

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 68.4 (c), the State requests oral argument because the substantive issues in this case could affect a large number of DWI blood-draw cases throughout the State, and oral argument may help to further clarify the factual and legal issues.

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

## STATEMENT OF THE CASE

The appellant was charged with driving while intoxicated as a third offender (CR – 10). A jury found him guilty, and the trial court thereafter assessed punishment at 25 years in prison (CR – 309, 313).

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals originally affirmed the conviction, finding that the appellant had failed to preserve his blood search warrant issue. *Perez v. State*, 01-12-01001-CR, 2014 WL 943126 (Tex. App.—Houston [1st Dist.] Mar. 11, 2014, no pet.) (attached as Appendix A). But the appellant filed a motion for rehearing, and the lower court reversed the conviction, finding that the issue was preserved. *Perez v. State*, 01-12-01001-CR, 2015 WL 1245469, at *1 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, pet. filed) (attached as Appendix B). The State filed a further motion for rehearing under TEX. R. APP. P. 49.5, which was denied on April 14. This petition for discretionary review is timely if filed on or before May 14, 2015. TEX. R. APP. P. 68.2.

## STATEMENT OF FACTS

At around 11:52 p.m. on June 10, 2011, Brian McCandless with the Humble Police Department was on patrol when he saw a red Corvette weaving through the lanes on a highway (RR. V – 22-24, 66) (St. Ex. 7). He followed the vehicle for a couple of miles, and observed that it continually swerved within its lane, which is a sign of intoxication (RR. V – 25-26). McCandless turned on his emergency equipment to stop the Corvette, which exited the highway and stopped in a moving lane of traffic (RR. V – 32-33, 35, 41) (St. Ex. 6).

McCandless walked up to the Corvette, saw that the appellant was driving, and noticed a strong odor of alcohol coming from the vehicle (RR. V – 42). The appellant admitted to drinking starting at 7:00 p.m., but he could not remember how many drinks he had ingested (RR. V – 43, 54-55). The officer administered the horizontal gaze nystagmus test to the appellant, and the appellant showed signs of intoxication (RR. V – 44-48). But the appellant refused to perform any additional tests (RR. V – 52). He also refused to provide a breath specimen, which lead to a suspension of his license (RR. V – 64-65) (St. Ex. 7).

Officer McCandless asked his dispatch for the appellant's criminal history, and he was able to verify that the appellant had at least two prior DWI convictions (RR. V – 66, 81) (St. Ex. 11). Therefore, the officer was required to obtain a specimen from the appellant in order to determine his level of intoxication (RR. V

– 85-87). The Supreme Court had not yet issued its opinion in *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), so Officer McCandless believed that he was required and authorized to obtain the appellant's blood based on Section 724.012 of the Texas Transportation Code (RR. V – 75). Blood was drawn from the appellant at a hospital at 1:20 a.m. on June 11, and testing of it revealed that his blood-alcohol level was 0.17, more than twice the legal limit (RR. V – 162-163) (St. Ex. 10).

## GROUNDS FOR REVIEW

A.   **The lower court erred in finding that the challenge to the blood draw was preserved for appellate review because the appellant did not timely raise the warrant issue during the suppression hearing and never presented evidence of the lack of a search warrant.**

B.   **The lower court erred in reversing the conviction based on *State v. Villarreal*, PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014), because this Court has granted rehearing in that case.**

C.   **The lower court erred in finding a constitutional violation in the blood draw when the officer made a reasonable mistake of law under *Heien v. N. Carolina*, 135 S. Ct. 530 (U.S. 2014).**

## ARGUMENT

This petition for discretionary review should be granted because the analysis used by the court of appeals has so far departed from the accepted and usual course of judicial proceedings so as to call for an exercise of this Court's power of

supervision. TEX. R. APP. P. 66.3. Specifically, the court of appeals originally recognized that the issue was not preserved for appellate review, but then reversed itself on rehearing despite the fact that the appellant did not timely raise the warrant issue during the suppression hearing and never presented evidence of the lack of a search warrant. Furthermore, the court of appeals based its holding on an opinion from this Court that has been granted a rehearing. Finally, the court of appeals failed to consider the implications of *Heien v. N. Carolina*, 135 S. Ct. 530 (U.S. 2014), where the officer in this case made a reasonable mistake of law in obtaining the blood sample.

The court of appeals initially held that the appellant had not preserved his search warrant issue for appellate review. *Perez*, 2014 WL 943126 at *7. On rehearing, however, the court of appeals held that the issue was preserved partly because the appellant filed a boilerplate pre-trial motion to suppress, which claimed that the evidence was not obtained "pursuant to a search warrant, was absent exigent circumstances, and made without probable cause to believe the Accused was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed." *Perez*, 2015 WL 1245469 at *1. This written motion was eight pages long, was filed almost one year prior to trial, and contained, according to the appellant's own count, at least fifteen different bases for suppression (CR – 11-18). Moreover, the appellant never obtained a ruling on this

3

written motion to suppress, which was not even mentioned during the suppression hearing (CR – 18). Rather, the motion to suppress was an oral motion made at the end of the hearing (RR. IV – 52).

The trial court held a suppression hearing during which Officer McCandless was the sole witness (CR – 11) (RR. IV – 10). McCandless's testimony was limited to the reasonable suspicion for the traffic stop, which appears to have been the agreed-upon basis for the motion because the appellant cross-examined him solely on that issue and requested only that "the court suppress the arrest as well as the video." (RR. IV – 39-52). The trial court denied the appellant's oral motion to suppress and asked that the appellant be arraigned outside the presence of the jury (RR. IV – 52).

After the trial court had denied the oral motion to suppress, the appellant made an additional objection to the admission of "anything dealing with the blood tests" as follows:

> On the record, I am making an objection to the mention, to the admission, to any reference to the blood test, taking results or anything dealing with the blood test of my client, Antonio Perez, based on the failure of the state to get a warrant for the blood taking under the Statute 725, I believe it is, 12(B). There is no authority for the officer to take the blood of my client without a warrant, and that is what he did in this case.

> My client was under arrest. He invoked his right to counsel prior to the taking of – or the request for the blood. He refused to do the request for blood and breath. He was taken to the hospital.

The form that the officer filled out which is the THP-51 form is the old form. It does not have anything in there except that the officer has to reasonably believe and check one of these boxes that there was an accident with death, serious bodily injury or hospital treatment for bodily injury; two, that there was a DWI with a minor child under 15; three, prior convictions for specific offense and four, the DWI third which he was supposed to check one of those boxes which he didn't do it.

In this case, he used this authority to withdraw blood against my client's consent and denied him of his constitutional right of illegal search and seizure in this case, the illegal search and seizure by the police in this case.

He didn't follow the statutory authority that required him to in this particular case to have a warrant before he withdrew the blood from my client; and on that basis, we are asking the court to suppress or deny the blood taking, mentioning of the blood or any aspects of a blood test in this case.

(RR. IV – 52-54). Thus, the appellant appeared to argue that McCandless failed comply with the statute because he did not check the appropriate box on the THP-51 form and that he was therefore required to obtain a warrant (RR. IV – 53). The State responded that "the THP-51 form is merely a form with regard to liability," and that McCandless properly complied with the "controlling part of the Transportation Code [] 724.012." (RR. IV – 54). The appellant countered that "a mandatory warrant would be the only way that they could withdraw blood in this case," and affirmed that he was specifically referring to "724.012(B)(3)(B)." (RR. IV – 55). The trial court then denied the appellant's additional oral motion (RR. IV – 55).

5

The defendant in a criminal proceeding who alleges a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007) (citing *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986) ("When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, this Court has placed the burden of proof initially upon the defendant ... [who] must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State.") (citations omitted)). "A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant." *Id.* The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances. *Id.*, 221 S.W.3d at 672-73.

In the present case, because the suppression hearing dealt only with the issue of reasonable suspicion for the traffic stop, there was no evidence that the search occurred without a warrant. Therefore, the State never had the burden of proof to show reasonableness, and the issue was never joined or preserved for appellate review. Furthermore, by laying behind the log during the suppression hearing and failing to correct the mistaken impressions of the prosecutor and the trial court regarding the basis for the suppression, the appellant failed to preserve the issue for appellate review. *See* TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a

6

complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion that: (A) stated the grounds for the ruling that the complaining party sought from the trial court with *sufficient specificity to make the trial court aware of the complaint*, unless the specific grounds were apparent from the context…") (emphasis added); *Phillips v. Bramlett*, 288 S.W.3d 876, 882-83 (Tex. 2009) ( "the asserted error was not preserved because the trial court's response indicated that it did not understand the objection, and counsel made no further attempt to clarify the court's understanding or obtain a ruling on his objection."). Therefore, the court of appeals erred in reversing itself on the issue of preservation. This Court should assure the court of appeals that its original opinion was correct and affirm the conviction.

In its opinion on rehearing, the court of appeals relied primarily upon *State v. Villarreal*, PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014), for the proposition that the warrantless taking of the appellant's blood sample violated his Fourth Amendment rights. *Perez*, 2015 WL 1245469, at *6. But this Court has granted rehearing in that case, which was decided by a five to four vote. Therefore, because *Villarreal* guided so much of the lower court's opinion on rehearing, this Court should reverse, remand, or affirm the case depending on the ultimate outcome of *Villarreal*. *See, e.g., Bell v. State*, 928 S.W.2d 566 (Tex. Crim.

App. 1996) ("At the time of its opinion, this Court's opinion in *Clewis*…had been handed down but was *not yet final*, as rehearing was pending.") (emphasis added).

Whatever the ultimate holding in *Villarreal*, the court of appeals erred in finding that the blood draw violated the constitution when Officer McCandless made a reasonable mistake of law. In *Heien v. North Carolina*, 135 S.Ct. 530 (2014), a police officer pulled over a vehicle because one brake light was out on the vehicle and he believed the statute at issue required two working brake lights. *Id.*, 135 S.Ct. at 534. During a subsequent search based on the suspicious behavior of the occupants, the officer found cocaine in the vehicle. *Id.* The trial court denied the appellant's motion to suppress, but the North Carolina Court of Appeals reversed, holding that the statute only required one working brake light. *Id.*

The United States Supreme Court granted review in *Heien* and held in an eight-to-one majority opinion that the search was reasonable because suspicion can be based on a reasonable mistake of law as well as a reasonable mistake of fact. *Id.*, 135 S.Ct. at 536. The Court traced this principal back to its earliest days when Justice Marshall declared "A doubt as to the true construction of the law is as reasonable a cause for seizure as a doubt respecting the fact." *United States v. Riddle*, 5 Cranch 311, 313, 3 L.Ed. 110 (1809). The concurring opinion clarified that the law at issue must be so doubtful in construction "that a reasonable judge

8

could agree with the officer's view." *Heien*, 135 S.Ct. at 541 (Kagan, J., concurring).

In the present case, numerous reasonable judges have agreed with Officer McCandless's interpretation of the statute at issue. Section 724.012 of the Transportation Code provides in part that a "peace officer *shall require* the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for [DWI] and the person refuses the officer's request to submit to the taking of a specimen voluntarily." TEX. TRANSP. CODE § 724.012(b) (West 2010) (emphasis added). One of the enumerated circumstances is having two prior DWI convictions. TEX. TRANSP. CODE § 724.012(b)(3)(A) (West 2010). But the text of the statute does not independently *allow* for the taking of a blood sample. Rather, it simply *requires* the taking of a sample in certain enumerated instances. In light of *Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013), the officer is still required to obtain the sample through constitutionally permissible means. *Gore v. State*, 451 S.W.3d 182, 189 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) ("While the statute does make a blood draw without consent mandatory in certain circumstances, it does not mandate a blood draw without a warrant.").

In the present case, Officer McCandless apparently believed that Section 724.012 allowed him to obtain the blood sample without a search warrant (RR. V –

9

75). Thus, he was operating under a mistake of law when he obtained the sample without a search warrant or a recognized exception to a search warrant. Nevertheless, it was a reasonable mistake of law because many reasonable judges, including those on this Court, have interpreted Section 724.012 as a sufficient independent authorization for obtaining a sample. *See Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) ("implied consent statutes do not prevent the State from obtaining evidence by alternative constitutional means"); *State v. Neesley*, 239 S.W.3d 780, 786 (Tex. Crim. App. 2007) ("We hold that in cases which satisfy the conditions for mandatory taking of a specimen under §724.012(b), a peace officer is required to take one specimen of breath or blood *and is permitted* to take no more than one specimen) (emphasis added); *Aviles v. State*, 385 S.W.3d 110, 116 (Tex. App.—San Antonio 2012, pet. ref'd), *vacated*, 134 S.Ct. 902 (2014) ("the warrantless seizure of Aviles's blood was conducted according to the prescriptions of the Transportation Code, and without violating Aviles's Fourth Amendment rights."). Therefore, under *Heien*, the search in the present case was reasonable and should have been upheld by this Court.

In *Evans v. State*, 14-13-00642-CR, 2015 WL 545702 (Tex. App.—Houston [14th Dist.] Feb. 10, 2015, no. pet. h.) (not designated for publication), another court of appeals rejected an argument under *Heien* because the officer in that case took the blood sample "in accordance with the exact language of the mandatory

blood draw provision. Because Trooper Robinson did not misinterpret the statute, there can be no mistake of law defense." *Id.*, 2015 WL 545702 at *4 n.5. But the *Evans* court misstated the relevant statute. The *Evans* court stated that the "implied consent statute does not authorize a blood draw, without [] consent, unless the mandatory blood draw provisions of Section 724.012(b) are implicated." *Id.*, 2015 WL 545702 at *4. But the text of Section 724.012(b) does not authorize anything. It requires the taking of a sample, but says nothing about the authority to take it. TEX. TRANSP. CODE § 724.012(b)(3)(B) (West 2010). Moreover, such a view of Section 724.013(b) flies in the face of the lower court's holding that "While the statute does make a blood draw without consent mandatory in certain circumstances, it does not mandate a blood draw without a warrant." *Gore*, 451 S.W.3d at 189. Therefore, *Evans* was based on a faulty reading of the statute, and its conclusion is invalid.

The trial court did not abuse its discretion in denying the appellant's motion to suppress because Officer McCandless was operating under a reasonable mistake of the law when he obtained the appellant's blood sample. *See Heien*, 135 S.Ct. 530; *see also Beeman*, 86 S.W.3d at 616; *Neesley*, 239 S.W.3d at 786; *Aviles*, 385 S.W.3d at 116. Therefore, the trial court's decision should have been affirmed. This Court should grant the State's petition and correct the most recent opinion by the lower court of appeals in this case.

11

## PRAYER FOR RELIEF

It is respectfully requested that this petition should be granted and that the court of appeals should be reversed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Eric Kugler
**ERIC KUGLER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
kugler_eric@dao.hctx.net
TBC No. 796910

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 2,831 words in the relevant sections; and (b) a copy of the foregoing instrument will be served by efile.txcourts.gov to:

Joseph Salhab
Attorney at Law
2028 Buffalo Terrace
Houston, Texas  77019
josephsalhab@mindspring.com

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711
Lisa.McMinn@SPA.texas.gov

/s/ Eric Kugler
**ERIC KUGLER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 796910

Date: January 22, 2015

*Appendix A*

*Perez v. State,*
*01-12-01001-CR, 2014 WL 943126*
*(Tex. App.—Houston [1st Dist.] Mar. 11, 2014, no pet.)*

▷
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
Houston (1st Dist.).
Antonio Ruiz PEREZ, Appellant
v.
The STATE of Texas, Appellee.

No. 01–12–01001–CR.
March 11, 2014.

**Background:** Following denial of his motion to suppress evidence, defendant was convicted, in the 339th District Court, Harris County, Maria T. Jackson, J., of driving while intoxicated (DWI), third offense, and sentence of twenty-five years' confinement was imposed. Defendant appealed.

**Holdings:** The Court of Appeals, Evelyn V. Keyes, J., held that:
(1) arresting officer had probable cause to support warrantless arrest of defendant for DWI, and
(2) warrantless taking of defendant's blood sample following his DWI arrest did not violate defendant's Fourth Amendment rights, as defendant's consent to taking of blood sample was implied pursuant to applicable provision of implied consent law.

Affirmed.

West Headnotes

**[1] Criminal Law 110 ⚷1139**

110 Criminal Law
 110XXIV Review
  110XXIV(L) Scope of Review in General
   110XXIV(L)13 Review De Novo
    110k1139 k. In general. Most Cited Cases

**Criminal Law 110 ⚷1158.12**

110 Criminal Law
 110XXIV Review
  110XXIV(O) Questions of Fact and Findings
   110k1158.8 Evidence
    110k1158.12 k. Evidence wrongfully obtained. Most Cited Cases

When reviewing a trial court's denial of a motion to suppress, the appellate court gives almost total deference to a trial court's express or implied determinations of historical facts, while reviewing de novo the court's application of the law of search and seizure to those facts.

b

**[2] Criminal Law 110 🔑1144.12**

110 Criminal Law
    110XXIV Review
        110XXIV(M) Presumptions
            110k1144 Facts or Proceedings Not Shown by Record
                110k1144.12 k. Reception of evidence. Most Cited Cases

An appellate court reviewing a trial court's ruling on a motion to suppress views the evidence in the light most favorable to the trial court's ruling.

**[3] Criminal Law 110 🔑392.54**

110 Criminal Law
    110XVII Evidence
        110XVII(I) Competency in General
            110k392.1 Wrongfully Obtained Evidence
                110k392.54 k. Trial judge as sole arbiter of credibility. Most Cited Cases

At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony, and the trial court may choose to believe or disbelieve any part or all of a witness's testimony.

**[4] Criminal Law 110 🔑1134.49(4)**

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110XXIV(L)4 Scope of Inquiry
                110k1134.49 Evidence
                    110k1134.49(4) k. Illegally obtained evidence. Most Cited Cases

The appellate court sustains the trial court's ruling on a motion to suppress only if it is reasonably supported by the record and correct on any theory of law applicable to the case.

**[5] Automobiles 48A 🔑349(6)**

48A Automobiles
    48AVII Offenses
        48AVII(B) Prosecution
            48Ak349 Arrest, Stop, or Inquiry; Bail or Deposit
                48Ak349(2) Grounds
                    48Ak349(6) k. Intoxication. Most Cited Cases

Arresting officer had probable cause to believe that defendant committed offense of driving while intoxicated (DWI), as necessary to support warrantless arrest of defendant for DWI, where officer observed defendant commit a moving violation

c

by failing to maintain his lane, defendant stopped vehicle in an unsafe location when officer initiated traffic stop, officer smelled strong odor of alcohol and defendant admitted he had been drinking alcoholic beverages, defendant was unsteady on his feet when he complied with officer's request to exit vehicle, defendant failed only field sobriety test to which he submitted, the horizontal gaze nystagmus (HGN) test, and defendant failed to submit to other field sobriety testing or provide a blood or breath sample. U.S.C.A. Const.Amend. 4.

**[6] Arrest 35 ⚷63.4(13)**

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(13) k. Personal knowledge or observation in general. Most Cited Cases

Warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause. U.S.C.A. Const.Amend. 4.

**[7] Arrest 35 ⚷63.4(2)**

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(2) k. What constitutes such cause in general. Most Cited Cases

**Arrest 35 ⚷63.4(4)**

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(4) k. Time of existence; after-acquired information. Most Cited Cases

Probable cause for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. U.S.C.A. Const.Amend. 4.

**[8] Arrest 35 ⚷63.4(2)**

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(2) k. What constitutes such cause in general. Most Cited Cases

**Arrest 35 ⚷63.4(3)**

d

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(3) k. Suspicion or rumor. Most Cited Cases

A finding of probable cause, as necessary to support warrantless arrest, requires more than bare suspicion, but less than would justify conviction. U.S.C.A. Const.Amend. 4.

**[9] Arrest 35 ☞63.4(2)**

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(2) k. What constitutes such cause in general. Most Cited Cases

Test for probable cause to support a warrantless arrest is objective, is unrelated to the subjective beliefs of the arresting officer, and requires a consideration of the totality of the circumstances facing the arresting officer. U.S.C.A. Const.Amend. 4.

**[10] Searches and Seizures 349 ☞192.1**

349 Searches and Seizures
    349VI Judicial Review or Determination
        349k192 Presumptions and Burden of Proof
            349k192.1 k. In general. Most Cited Cases

Once a defendant alleging a Fourth Amendment violation has carried his initial burden of producing some evidence rebutting the presumption of proper police conduct, such as by establishing that a seizure occurred without a warrant, then the burden shifts to the State to prove that the seizure was nonetheless reasonable. U.S.C.A. Const.Amend. 4.

**[11] Automobiles 48A ☞419**

48A Automobiles
    48AIX Evidence of Sobriety Tests
        48Ak417 Grounds for Test
            48Ak419 k. Grounds or cause; necessity for arrest. Most Cited Cases

Warrantless taking of defendant's blood sample, following his arrest for driving while intoxicated (DWI), did not violate defendant's Fourth Amendment rights by requiring him to submit to a warrantless blood test without his consent, as defendant's consent to the taking of a blood sample was implied pursuant to provision of implied consent law requiring the state to obtain a blood or breath sample from an individual arrested for DWI if the arresting officer has reliable information that the individual has two or more previous DWI convictions; officer validly arrested defendant for DWI, and officer had obtained reliable information from police station dispatch that defendant had at least two prior DWI convictions prior to taking defendant to hospital for blood draw. U.S.C.A. Const.Amend. 4; V.T.C.A., Transportation Code § 724.012(b)(3)(B).

**[12] Searches and Seizures 349 ☞14**

349 Searches and Seizures
    349I In General
        349k13 What Constitutes Search or Seizure
            349k14 k. Taking samples of blood, or other physical specimens; handwriting exemplars. Most Cited Cases

    The taking of a blood specimen is a search and seizure under the Fourth Amendment. U.S.C.A. Const.Amend. 4.

**[13] Searches and Seizures 349 ☞24**

349 Searches and Seizures
    349I In General
        349k24 k. Necessity of and preference for warrant, and exceptions in general. Most Cited Cases

    A warrantless search or seizure is per se unreasonable, unless it falls under a recognized exception to the warrant requirement. U.S.C.A. Const.Amend. 4.

**[14] Searches and Seizures 349 ☞171**

349 Searches and Seizures
    349V Waiver and Consent
        349k171 k. In general. Most Cited Cases

    One exception to the requirement that a search be supported by a warrant is a search that is conducted pursuant to consent. U.S.C.A. Const.Amend. 4.

**[15] Criminal Law 110 ☞1043(3)**

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
            110XXIV(E)1 In General
                110k1043 Scope and Effect of Objection
                    110k1043(3) k. Adding to or changing grounds of objection. Most Cited Cases

    Defendant who sought suppression of his blood test results in driving while intoxicated (DWI) prosecution waived appellate review of his argument that portions of implied consent law were unconstitutional by failing to raise those specific arguments before the trial court; although defendant argued before the trial court that the taking of his blood following his DWI arrest violated his Fourth Amendment Rights by requiring him to submit to a warrantless blood test without consent, defendant did not specifically argue that the implied consent statute was unconstitutional. U.S.C.A. Const.Amend. 4.

Joseph Salhab, Houston, for Appellant.

Devon Anderson, District Attorney, Eric Kugler, Assistant District Attorney, Houston, for Appellee.

f

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

**\*1** A jury convicted appellant, Antonio Ruiz Perez, of driving while intoxicated ("DWI"), third offense, and the trial court assessed his punishment at twenty-five years' confinement. In two points of error, appellant argues that the trial court erred in denying his motion to suppress because: (1) the arresting officer lacked probable cause to arrest him without a warrant and (2) the warrantless taking of his blood sample violated the Fourth Amendment under to *Missouri v. McNeely.*

We affirm.

## Background

At approximately 11:50 p.m. on June 10, 2011, Officer B. McCandless observed a red Corvette failing to maintain a single marked lane and followed it for several miles. After observing further unsafe driving, Officer McCandless initiated a traffic stop, and the Corvette exited the highway and stopped in the outside lane of the service road. Upon approaching the Corvette, Officer McCandless observed that appellant was the driver and that a strong odor of alcohol was coming from the vehicle. Officer McCandless testified that appellant stated that he had been drinking, so he administered the horizontal gaze nystagmus (HGN) test and determined that appellant showed signs of intoxication. Officer McCandless detained appellant and decided to conduct additional sobriety testing in a safer environment. However, appellant refused to provide a breath specimen.

Pursuant to his detention of appellant, Officer McCandless obtained appellant's criminal history through the station's dispatch system and determined that he had two prior DWI convictions. Officer McCandless then took appellant to a hospital where appellant's blood was drawn at approximately 1:20 a.m. on June 11. The blood test revealed that appellant had a blood alcohol level of 0.17, more than twice the legal limit.

At trial, appellant filed a general motion to suppress that did not specifically mention the blood draw but argued generally that "[t]he acquisition of the evidence which the Government will offer in this cause was not pursuant to a search warrant, was absent exigent circumstances, and made without probable cause to believe the Accused was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed." Officer McCandless was the only witness at the hearing on the motion to suppress. He testified that a little before midnight on June 10, 2011, he observed a red Corvette "swerving and failing to maintain a single marked lane" in a manner that posed a danger to the surrounding vehicles. The officer testified that based on his "past experience and the past arrests that [he] had made, just seeing the way that [the Corvette driver] was acting, the time of night and the roadway that [they] were on, that led me to believe that he was possibly intoxicated" or impaired by some means. Officer McCandless then initiated the traffic stop. Appellant cross-examined Officer McCandless on the basis for his probable cause to initiate the traffic stop. Appellant then asked "that the court suppress the arrest as well as the video." The trial court denied the motion to suppress.

**\*2** Appellant's attorney then stated:

On the record, I am making an objection to the mention, to the admission, to any reference to the blood test, taking results or anything dealing with the blood test of my client, [appellant], based on the failure of the State to get a warrant for the blood taking under the Statute 725, I believe it is, 12(b).

There is no authority for the officer to take the blood of my client without a warrant, and that is what he did in this case.

My client was under arrest. He invoked his right to counsel prior to the taking of—or the request for the blood. He

g

refused to do the request for blood and breath. He was taken to the hospital.

He further stated that the officer failed to fill out the "THP–51" form correctly because he did not check one of the boxes and "he used this authority to withdraw blood against my client's consent and denied him of his constitutional right of illegal search and seizure in this case." He went on to argue that Officer McCandless "didn't follow the statutory authority that required him to in this particular case to have a warrant before he withdrew the blood from my client." Appellant asked the trial court to suppress "any aspects of a blood test in this case."

The State responded that Transportation Code section 724.012 was the controlling authority in this case and that it did not require that a search warrant be obtained if one of the listed criteria was met. The State also argued that the "THP–51 form is merely a form with regard to liability" and that "the officer's testimony would be the best form of evidence as to this case and why a mandatory blood draw was a necessity." [FN1] Appellant responded:

> Therefore, it will be the Constitution of the United States as well as the statutory laws of the State of Texas on the search and seizure law; and I don't believe that the State has properly followed the law when they withdrew the blood here and the statutory and the constitutional law and case law regarding withdrawal of blood with a warrant. They didn't obtain a warrant. This is a warrantless search while the person was in custody under arrest and while the person also invoked his right to counsel; and therefore, a mandatory warrant would be the only way that they could withdraw blood in this case.

The trial court verified that the State was relying on Transportation Code section 724.012(b)(3)(B). It then denied appellant's motion to "suppress or deny the admission of the blood test."

At trial, Officer McCandless testified before the jury regarding his arrest of appellant for DWI. He testified again regarding his observations that led him to initiate the traffic stop. He stated that when he made contact with appellant he "could smell a strong odor of alcoholic beverage emitting from the vehicle." He further testified that appellant "admitted to having been drinking" and "could not remember how many he had to drink." Officer McCandless also observed when appellant exited the vehicle that appellant was "slightly unsteady" and "not balanced." He testified that he then administered the HGN test to appellant, which is a test "where we check the eyes and have them follow a stimulus or your finger with both of their eyes to check to see if there is equal tracking, to check to see if there is any involuntary jerking or bouncing of the eye." Officer McCandless observed "a lack of smooth pursuit," which indicated to him that appellant was intoxicated.

**\*3** Rather than completing the remainder of the HGN test, he decided "to detain [appellant] to get us off of the roadway for my safety and his." Officer McCandless testified that he believed it would have been unsafe to administer the full battery of field sobriety tests at the location where appellant stopped his vehicle because they were "in a moving lane of traffic," making it more likely that they could be struck by traffic exiting the nearby highway or driving along the service road. He handcuffed appellant and placed him in the police vehicle to "take him back to [the] station to complete the standardized field sobriety tests in a controlled environment."

However, upon returning to the station, appellant refused to complete any of the field sobriety tests. At that point, based on appellant's driving, "the strong odor of alcohol emitting from the vehicle, the time of night, the fact that he started drinking at 7:00 and [could not] remember how many alcoholic beverages he had consumed," Officer McCandless placed appellant under arrest for suspicion of DWI and asked for a breath or blood specimen. He read appellant a statutory warning advising that he was under arrest for DWI, that a refusal to submit a specimen would result in having his license taken away, and that such a refusal could be used as potential evidence of guilt in any future proceedings. Appellant refused to give a breath or blood sample and refused to sign the statutory warning.

At that point, Officer McCandless asked the station's dispatch to run appellant's criminal history, and he discovered that appellant had at least two prior DWI convictions. At trial, appellant stipulated, for jurisdictional purposes only, to the

h

existence of two prior DWI convictions. Officer McCandless testified that the two prior convictions satisfied the statutory requirement for obtaining a mandatory blood specimen, stating, "At the time of the suspect's arrest, I possessed or received reliable information from a credible source that on two or more occasions the suspect had previously been convicted of or placed on community supervision of an offense under [the appropriate sections of the] Texas Penal Code." He transported appellant to a local hospital where his blood was drawn at 1:20 a.m. on June 11,2011.

Wesley Colwell, the nurse who drew appellant's blood, testified regarding the procedure he employed to take appellant's blood sample. Dr. Jeff Walterscheid, the assistant chief toxicologist at the Harris County Institute of Forensic Sciences, testified regarding the results of appellant's blood test. He testified that appellant had a blood alcohol level of 0.17, which was "roughly double" the legal limit.

The jury convicted appellant of DWI and the trial court assessed his punishment at twenty-five years' confinement. This appeal followed.

## Analysis

Appellant argues that the trial court erred in failing to suppress the results of his blood draw.

### A. Standard of Review

**\*4** [1][2][3][4] We review a denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex.Crim.App.2008) (citing *State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App.2006)). When we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determinations of historical facts [while] review[ing] de novo the court's application of the law of search and seizure to those facts." *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State,* 214 S.W.3d 17, 24 (Tex.Crim.App.2007) (quoting *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006)). The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State,* 237 S.W.3d 720, 725 (Tex.Crim.App.2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State,* 934 S.W.2d 92, 98 (Tex.Crim.App.1996). We sustain the trial court's ruling only if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State,* 117 S.W.3d 854, 857 (Tex.Crim.App.2003).

### B. Probable Cause to Arrest

[5] In his first point of error, appellant argues that the trial court erred in denying his motion to suppress and admitting his blood test results because the State did not show probable cause for his warrantless arrest for DWI.

[6][7] The Fourth Amendment to the United States Constitution, which is made applicable to the states by the Due Process Clause of the Fourteenth Amendment, guarantees that "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures, shall not be violated." U.S. CONST. amends. IV, XIV; *Amador v. State,* 275 S.W.3d 872, 878 (Tex.Crim.App.2009). Under the Fourth Amendment, a warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause. *Amador,* 275 S.W.3d at 878 (citing *United States v. Watson,* 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)). " 'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Id. (citing Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

[8][9][10] A finding of probable cause requires "more than bare suspicion" but less than would justify conviction. *Id.* (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). The test for probable cause is objective, "unrelated to the subjective beliefs of the arresting officer," and "it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.* Once a defendant has carried his initial burden of producing some evidence

rebutting the presumption of proper police conduct—i.e. by establishing that the seizure occurred without a warrant—the burden shifts to the State to prove that the seizure was nonetheless reasonable. *Id.*

***5** Here, evidence at the suppression hearing indicated that Officer McCandless observed appellant commit a moving violation by failing to maintain his lane and observed appellant weaving within his lane and crossing onto the shoulder. Officer McCandless testified that he was concerned appellant's driving posed a danger to the other drivers on the roadway. When Officer McCandless pulled appellant over, he smelled a strong odor of alcohol coming from appellant's vehicle, appellant acknowledged that he had consumed alcoholic beverages, and appellant was unsteady on his feet as he complied with Officer McCandless's request that he exit the vehicle. Officer McCandless also administered a portion of the HGN test and determined that appellant was possibly intoxicated, and appellant refused to cooperate with further field sobriety testing. Given the totality of the circumstances, this evidence constituted "more than a bare suspicion" and was sufficient to warrant Officer McCandless's belief that appellant had committed the offense of DWI. *See id.*

Appellant argues that this case is similar to *State v. Mosely,* and, thus, we should reverse the trial court. However, we consider *Mosely* to be distinguishable from the present case. The trial court in *Mosely* granted the defendant's motion to suppress and its findings of fact and conclusions of law supported that ruling, which is not the case here. *See* 348 S.W.3d 435, 441 (Tex.App.-Austin 2011, pet. ref'd) ("The question we must answer is whether this record so thoroughly satisfies the State's burden of establishing that [the officer] had probable cause to arrest Mosely for DWI that the trial court's ruling to the contrary was an abuse of discretion."). Furthermore, while the court in *Mosely* concluded that evidence that Mosely had caused an accident, his breath smelled of alcohol, his eyes were bloodshot, and he had admitted to having a couple of drinks did not constitute evidence of probable cause in that case, the State here presented additional evidence establishing Officer McCandless's probable cause for arresting appellant. *See id.* at 441 (concluding State did not establish that Mosely "lacked the normal use of his mental or physical faculties" because no officer performed field sobriety testing or "form[ed] an opinion as to whether Mosely was intoxicated"; officers did not observe slurred speech, trouble maintaining balance, or "anything else to suggest that [Mosely] was physically or mentally impaired").

Here, as we have already stated, Officer McCandless observed appellant driving in an unsafe manner that violated at least one provision of the Transportation Code; appellant smelled strongly of alcohol and admitted that he had been drinking; and appellant was unsteady on his feet. Officer McCandless testified that the circumstances surrounding appellant's traffic stop, including the unsafe driving, the unsafe location appellant chose to pull over, and appellant's actions and speech at the time he was stopped, led him to form the opinion that appellant was intoxicated, unlike the officers in *Mosely* who testified that they did not form an opinion regarding whether Mosely was intoxicated. *See Henderson v. State,* 29 S.W.3d 616, 622 (Tex.App.-Houston [1st Dist.] 2000, pet ref'd) (concluding that officer's testimony "that an individual is intoxicated is probative evidence of intoxication."). And, unlike *Mosely,* in which officers did not administer field sobriety tests to Mosely, appellant failed the only portion of the field sobriety testing to which he submitted, refused to allow Officer McCandless to complete the field sobriety testing, and refused to provide a breath or blood sample. *See* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 2011) ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial."); *Bartlett v. State,* 270 S.W.3d 147, 153 (Tex.Crim.App.2008) (observing that defendant's refusal to submit to breath test is admissible under Transportation Code section 724.061 as tending to show defendant's consciousness of guilt). Thus, we conclude that *Mosely* is distinguishable from the present case.

***6** We cannot conclude that the trial court abused its discretion in denying appellant's motion to suppress on this ground. We overrule appellant's first point of error.

## C. Constitutionality of Blood Draw

[11] In his second point of error, appellant argues that the warrantless taking of his blood sample violated his Fourth Amendment rights by requiring him to submit to a blood test without his consent and without other justification for the

j

search.

[12][13][14] The taking of a blood specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966). A warrantless search or seizure is per se unreasonable, unless it falls under a recognized exception to the warrant requirement. *Katz v. United State,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Walter v. State,* 28 S.W.3d 538, 541 (Tex.Crim.App.2000). One such exception is a search conducted pursuant to consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973). The Court of Criminal Appeals has stated that "[t]he implied consent law does just that—it implies a suspect's consent to a search in certain instances. This is important when there is no search warrant, since it is another method of conducting a constitutionally valid search." *Beeman v. State,* 86 S.W.3d 613, 615 (Tex.Crim.App.2002) (en banc). The Court of Criminal Appeals held,

> The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant.

> *Id.* at 616.

Both the United States Supreme Court and the Court of Criminal Appeals have recognized a two-part analysis for determining the legality of a blood draw: reviewing courts must determine whether the police were justified in requiring the appellant to submit to a blood test and whether the means and procedures employed in taking the blood respected the relevant Fourth Amendment standards of reasonableness. *See State v. Johnston,* 336 S.W.3d 649, 658 (Tex.Crim.App.2011) (citing *Schmerber,* 384 U.S. at 768, 86 S.Ct. at 1834).

Section 724.012(b)(3)(B) provides that "[a] peace officer shall require the taking of a specimen of the person's breath or blood if ... the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle ... and the person refuses the officer's request to submit to the taking of a specimen voluntarily" if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person ... on two or more occasions, has been previously convicted of ... an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code." TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B).

*7 The State presented evidence that satisfied the elements of this implied consent statute. Officer McCandless testified that he arrested appellant for suspicion of DWI when appellant refused to comply with further field sobriety testing or to provide a breath or blood sample voluntarily. Pursuant to this arrest, Officer McCandless asked the station's dispatcher to provide him a copy of appellant's criminal history. The copy of appellant's criminal history from the dispatcher provided McCandless with reliable information from a credible source that appellant had at least two previous DWI convictions. Appellant stipulated to the two previous convictions at trial for "jurisdictional purposes" and does not challenge their existence on appeal. Thus, the State established that the blood sample was taken pursuant to section 724.012(b)(3)(B), which served to imply appellant's consent to the taking of the blood sample. *See id.; Beeman,* 86 S.W.3d at 615–16. We conclude that this is evidence of implied consent that the police were justified in relying on under the circumstances of this case in requiring appellant to submit to a blood test. *See Johnston,* 336 S.W.3d at 658.

[15] In part of his second point of error, appellant argues that Transportation Code section 724.012(b) is itself unconstitutional because it "cannot authorize what the Constitution forbids." However, he did not argue in the trial court that the statute itself was unconstitutional because it provides for implied consent to a blood draw. He complained only that the taking of his blood violated his Fourth Amendment rights by requiring him to submit to a warrantless blood test without consent. Thus, he did not preserve his complaint that the statute is unconstitutional because it authorizes warrantless blood draws based on implied consent. *See* TEX.R.APP. P. 33.1. Accordingly, we need not address his argument that section

k

724.012(b) is unconstitutional in light of *Missouri v. McNeely,* —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013).

We conclude that the warrantless taking of appellant's blood sample in compliance with Transportation Code section 724.012(b) did not violate his Fourth Amendment rights by requiring him to submit to a warrantless blood test without his consent. We express no opinion as to the constitutionality of implied consent. We overrule appellant's second point of error.

**Conclusion**

We affirm the judgment of the trial court.

> FN1. Form THP–51 is the statutory authorization form that allows a peace officer to require that a hospital perform a mandatory blood drawing. *See* TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 2011); *State v. Neesley,* 239 S.W.3d 780, 782 n. 2 (Tex.Crim.App.2007).

Tex.App.–Houston [1 Dist.],2014.
Perez v. State
--- S.W.3d ----, 2014 WL 943126 (Tex.App.-Hous. (1 Dist.))

END OF DOCUMENT

*Appendix B*

*Perez v. State,*
*01-12-01001-CR, 2015 WL 1245469*
*(Tex. App.—Houston [1st Dist.] Mar. 17, 2015, pet. filed)*

2015 WL 1245469
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.
OPINION ON REHEARING
Court of Appeals of Texas,
Houston (1st Dist.

**Antonio** Ruiz **Perez**, Appellant
v.
The State of Texas, Appellee
NO. 01–12–01001–CR | Opinion issued March 17, 2015

**Synopsis**
**Background:** Following denial of his motion to suppress evidence, defendant was convicted in the 339th District Court, Harris County, Maria T. Jackson, J., of driving while intoxicated (DWI), third offense, and sentence of 25 years' confinement was imposed. Defendant appealed.

**Holdings:** On rehearing, the Court of Appeals, Evelyn V. Keyes, J., held that:

[1] arresting officer had probable cause to support warrantless arrest of defendant for DWI;

[2] warrantless taking of defendant's blood sample pursuant to implied consent law violated Fourth Amendment; and

[3] error in allowing evidence regarding the warrantless taking of defendant's blood sample and his toxicology results was harmful.

Reversed and remanded.

West Headnotes (17)

[1]
**Criminal Law**
Review De Novo
**Criminal Law**
Evidence wrongfully obtained

When reviewing a trial court's denial of a motion to suppress, the appellate court gives almost total deference to a trial court's express or implied determinations of historical facts, while reviewing de novo the court's application of the law of search and seizure to those facts.

Cases that cite this headnote

[2]
**Criminal Law**
Reception of evidence

An appellate court reviewing a trial court's ruling on a motion to suppress views the evidence in the light most favorable to the trial court's ruling.

Cases that cite this headnote

[3]
**Criminal Law**
Trial judge as sole arbiter of credibility

At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony, and the trial court may choose to believe or disbelieve any part or all of a witness's testimony.

Cases that cite this headnote

[4]
**Criminal Law**
Illegally obtained evidence
**Criminal Law**
Theory and Grounds of Decision in Lower Court

The appellate court sustains the trial court's ruling on a motion to suppress only if it is reasonably supported by the record and correct on any theory of law applicable to the case.

Cases that cite this headnote

[5]
**Automobiles**
Intoxication

Arresting officer had probable cause to believe that defendant committed offense of driving while intoxicated (DWI), as necessary to support warrantless arrest of defendant for DWI, where

officer observed defendant commit a moving violation by failing to maintain his lane, defendant stopped vehicle in an unsafe location when officer initiated traffic stop, officer smelled strong odor of alcohol and defendant admitted he had been drinking alcoholic beverages, defendant was unsteady on his feet when he complied with officer's request to exit vehicle, defendant failed only field sobriety test to which he submitted, the horizontal gaze nystagmus (HGN) test, and defendant failed to submit to other field sobriety testing or provide a blood or breath sample. U.S. Const. Amend. 4.

Cases that cite this headnote

[6]    **Arrest**
       👉Personal knowledge or observation in general

Warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause. U.S. Const. Amend. 4.

Cases that cite this headnote

[7]    **Arrest**
       👉What constitutes such cause in general
       **Arrest**
       👉Time of existence; after-acquired information

Probable cause for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. U.S. Const. Amend. 4.

Cases that cite this headnote

[8]    **Arrest**
       👉What constitutes such cause in general
       **Arrest**
       👉Suspicion or rumor

A finding of probable cause, as necessary to support warrantless arrest, requires more than bare suspicion, but less than would justify conviction. U.S. Const. Amend. 4.

[9]    **Arrest**
       👉What constitutes such cause in general

Test for probable cause to support a warrantless arrest is objective, is unrelated to the subjective beliefs of the arresting officer, and requires a consideration of the totality of the circumstances facing the arresting officer. U.S. Const. Amend. 4.

Cases that cite this headnote

[10]   **Searches and Seizures**
       👉Presumptions and Burden of Proof

Once a defendant alleging a Fourth Amendment violation has carried his initial burden of producing some evidence rebutting the presumption of proper police conduct, such as by establishing that a seizure occurred without a warrant, then the burden shifts to the State to prove that the seizure was nonetheless reasonable. U.S. Const. Amend. 4.

Cases that cite this headnote

[11]   **Criminal Law**
       👉Wrongfully obtained evidence
       **Criminal Law**
       👉Sufficiency and Scope of Motion

Defendant preserved for appellate review his argument that warrantless taking of his blood sample, following arrest for driving while intoxicated (DWI), violated his Fourth Amendment rights by requiring him to submit to blood test without his consent, though defendant's general motion to suppress did not specifically mention the blood draw, where motion to suppress argued generally that the State's warrantless acquisition of evidence was not valid, defendant's attorney objected at the suppression hearing to the State's failure to obtain a warrant for the blood draw and asked trial court to suppress "any aspects of a blood test" in the case, and defendant's attorney asserted at the suppression hearing that implied consent law did not provide authority for officer

o

to take defendant's blood without a warrant. U.S. Const. Amend. 4; Tex. Transp. Code Ann. § 724.012; Tex. R. App. P. 33.1.

Cases that cite this headnote

[12] **Criminal Law**
👉Constitutional questions

If a party fails to properly object to errors at trial, even constitutional errors can be forfeited, and the Court of Appeals should not address the merits of forfeited errors on appeal. Tex. R. App. P. 33.1.

Cases that cite this headnote

[13] **Criminal Law**
👉Adding to or changing grounds of objection

Defendant who sought suppression of his blood test results in driving while intoxicated (DWI) prosecution did not preserve for appellate review his argument that portions of implied consent law were unconstitutional, where defendant did not argue in the trial court that the implied consent law itself was unconstitutional, but instead complained only that the taking of his blood violated his Fourth Amendment rights by requiring him to submit to warrantless blood test without adequate consent. U.S. Const. Amend. 4; Tex. Transp. Code Ann. § 724.012(b); Tex. R. App. P. 33.1.

Cases that cite this headnote

[14] **Searches and Seizures**
👉Taking samples of blood, or other physical specimens; handwriting exemplars

The taking of a blood specimen is a search and seizure under the Fourth Amendment. U.S. Const. Amend. 4.

Cases that cite this headnote

[15] **Searches and Seizures**
👉Fourth Amendment and reasonableness in general
**Searches and Seizures**
👉Necessity of and preference for warrant, and exceptions in general

In general, to comply with the Fourth Amendment, a search of a person pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances. U.S. Const. Amend. 4.

Cases that cite this headnote

[16] **Automobiles**
👉Consent, express or implied

Warrantless taking of defendant's blood sample pursuant to implied consent law, following defendant's arrest for driving while intoxicated (DWI), did not fall within consent exception to warrant requirement and, thus, violated Fourth Amendment; defendant had revoked or withdrawn any implied consent to the blood draw when he refused to provide a breath or blood specimen after his arrest and refused to sign statutory warnings that officer had provided to him regarding consequences of failing to provide a specimen. U.S. Const. Amend. 4; Tex. Transp. Code Ann. § 724.012(b).

2 Cases that cite this headnote

[17] **Criminal Law**
👉Evidence wrongfully obtained

Trial court's violation of defendant's Fourth Amendment rights, during prosecution for driving while intoxicated (DWI), in allowing evidence regarding the warrantless taking of defendant's blood sample and his toxicology results was harmful and, thus, required reversal, where jury charge instructed jurors that "intoxicated" meant "having an alcohol concentration of 0.08 or more," and assistant chief toxicologist testified that defendant's blood sample contained .17 grams of ethanol per 100 milliliters and that this amount of alcohol was "roughly double" the legal limit in Texas. U.S. Const. Amend. 4; Tex. R. App. P. 44.2(a).

Cases that cite this headnote

p

**On Appeal from the 339th District Court, Harris County, Texas, Trial Court Case No. 1309538**

**Attorneys and Law Firms**
Joseph Salhab, Houston, TX, for Appellant.

Devon Anderson, District Attorney, Eric Kugler, Assistant District Attorney, Houston, TX, for State of Texas.

Panel consists of Justices Keyes, Higley, and Massengale.

## OPINION ON REHEARING

Evelyn V. Keyes, Justice

**\*1** Appellant, Antonio Ruiz Perez, moved for rehearing of our March 11, 2014 opinion. We grant rehearing, withdraw the opinion and judgment dated March 11, 2014, and issue this opinion and judgment in their stead.[1] Appellant's motion for en banc reconsideration is dismissed as moot.

A jury convicted appellant of driving while intoxicated ("DWI"), third offense, and the trial court assessed his punishment at twenty-five years' confinement. In two points of error, appellant argues that the trial court erred in denying his motion to suppress because: (1) the arresting officer lacked probable cause to arrest him without a warrant and (2) the warrantless taking of his blood sample violated his rights under the Fourth Amendment.

We reverse and remand.

### Background

At approximately 11:50 p.m. on June 10, 2011, Officer B. McCandless observed a red Corvette failing to maintain a single marked lane and followed it for several miles. After observing further unsafe driving, Officer McCandless initiated a traffic stop, and the Corvette exited the highway and stopped in the outside lane of the service road. Upon approaching the Corvette, Officer McCandless observed that appellant was the driver and that a strong odor of alcohol was coming from the vehicle. Officer McCandless testified that appellant stated that he had been drinking, so he administered the horizontal gaze nystagmus ("HGN") test and determined that appellant showed signs of intoxication. Officer

McCandless detained appellant and decided to conduct additional sobriety testing in a safer environment. However, appellant refused to provide a breath specimen.

Pursuant to his detention of appellant, Officer McCandless obtained appellant's criminal history through the station's dispatch system and determined that appellant had two prior DWI convictions. Officer McCandless then took appellant to a hospital where appellant's blood was drawn at approximately 1:20 a.m. on June 11. The blood test revealed that appellant had a blood alcohol level of 0.17, more than twice the legal limit.

At trial, appellant filed a general motion to suppress that did not specifically mention the blood draw but instead argued generally that the evidence offered by the State was not obtained "pursuant to a search warrant, was absent exigent circumstances, and made without probable cause to believe the Accused was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed." Officer McCandless was the only witness at the hearing on the motion to suppress. He testified that a little before midnight on June 10, 2011, he observed a red Corvette "swerving and failing to maintain a single marked lane" in a manner that posed a danger to the surrounding vehicles. The officer testified that, based on his "past experience and the past arrests that [he] had made, just seeing the way that [the Corvette driver] was acting, the time of night and the roadway that [they] were on, that led me to believe that he was possibly intoxicated" or impaired by some means. Officer McCandless then initiated the traffic stop. Appellant cross-examined Officer McCandless on the basis for his probable cause to initiate the traffic stop. Appellant then asked "that the court suppress the arrest as well as the video." The trial court denied the motion to suppress.

**\*2** Appellant's attorney then stated:

> On the record, I am making an objection to the mention, to the admission, to any reference to the blood test, taking results or anything dealing with the blood test of my client, [appellant], based on the failure of the State to get a warrant for the blood taking under the Statute 725, I believe it is, 12(b).
>
> There is no authority for the officer to take the blood of my client without a warrant, and that is what he did in this case.
>
> My client was under arrest. He invoked his right to counsel prior to the taking of—or the request for the blood. He refused to do the request for blood and breath. He was taken to the hospital.

He further stated that the officer failed to fill out the "THP–51" form correctly because he did not check one of the boxes and the officer "used this authority to withdraw

blood against my client's consent and denied him of his constitutional right of illegal search and seizure in this case." He went on to argue that Officer McCandless "didn't follow the statutory authority that required him to in this particular case to have a warrant before he withdrew the blood from my client." Appellant asked the trial court to suppress "any aspects of a blood test in this case."

The State responded that Transportation Code section 724.012 was the controlling authority in this case and that it did not require that a search warrant be obtained if one of the listed criteria was met. The State also argued that the "THP–51 form is merely a form with regard to liability" and that "the officer's testimony would be the best form of evidence as to this case and why a mandatory blood draw was a necessity."[2] Appellant responded:

> Therefore, it will be the Constitution of the United States as well as the statutory laws of the State of Texas on the search and seizure law; and I don't believe that the State has properly followed the law when they withdrew the blood here and the statutory and the constitutional law and case law regarding withdrawal of blood with a warrant. They didn't obtain a warrant. This is a warrantless search while the person was in custody under arrest and while the person also invoked his right to counsel; and therefore, a mandatory warrant would be the only way that they could withdraw blood in this case.

The trial court verified that the State was relying on Transportation Code section 724.012(b)(3)(B). It then denied appellant's motion to "suppress or deny the admission of the blood test."

At trial, Officer McCandless testified before the jury regarding his arrest of appellant for DWI. He testified again regarding his observations that led him to initiate the traffic stop. He stated that when he made contact with appellant he "could smell a strong odor of alcoholic beverage emitting from the vehicle." He further testified that appellant "admitted to having been drinking" and "could not remember how many he had to drink." Officer McCandless also observed when appellant exited the vehicle that appellant was "slightly unsteady" and "not balanced." He testified that he then administered the HGN test to appellant, which is a test "where we check the eyes and have them follow a stimulus or your finger with both of their eyes to check to see if there is equal tracking, to check to see if there is any involuntary jerking or bouncing of the eye." Officer McCandless observed "a lack of smooth pursuit," which indicated to him that appellant was intoxicated.

*3 Rather than completing the remainder of the HGN test, he decided "to detain [appellant] to get us off of the roadway for my safely and his." Officer McCandless testified that he believed it would have been unsafe to administer the full battery of field sobriety tests at the location where appellant stopped his vehicle because they were "in a moving lane of traffic," making it more likely that they could be struck by traffic exiting the nearby highway or driving along the service road. He handcuffed appellant and placed him in the police vehicle to "take him back to [the] station to complete the standardized field sobriety tests in a controlled environment."

However, upon returning to the station, appellant refused to complete any of the field sobriety tests. At that point, based on appellant's driving, "the strong odor of alcohol emitting from the vehicle, the time of night, [and] the fact that he started drinking at 7:00 and [could not] remember how many alcoholic beverages he had consumed," Officer McCandless placed appellant under arrest for suspicion of DWI and asked for a breath or blood specimen. He read appellant a statutory warning advising that he was under arrest for DWI, that a refusal to submit a specimen would result in having his license taken away, and that such a refusal could be used as potential evidence of guilt in any future proceedings. Appellant refused to give a breath or blood sample and refused to sign the statutory warning.

At that point, Officer McCandless asked the station's dispatch to run appellant's criminal history, and he discovered that appellant had at least two prior DWI convictions. At trial, appellant stipulated, for jurisdictional purposes only, to the existence of two prior DWI convictions. Officer McCandless testified that the two prior convictions satisfied the statutory requirement for obtaining a mandatory blood specimen, stating, "At the time of the suspect's arrest, I possessed or received reliable information from a credible source that on two or more occasions the suspect had previously been convicted of or placed on community supervision of an offense under [the appropriate sections of the] Texas Penal Code." He transported appellant to a local hospital where his blood was drawn at 1:20 a.m. on June 11, 2011.

Wesley Colwell, the nurse who drew appellant's blood, testified regarding the procedure he employed to take appellant's blood sample. Dr. Jeff Walterscheid, the assistant chief toxicologist at the Harris County Institute of Forensic Sciences, testified regarding the results of appellant's blood test. He testified that appellant had a blood alcohol level of 0.17, which was "roughly double" the legal limit.

The jury convicted appellant of DWI and the trial court assessed his punishment at twenty-five years' confinement. This appeal followed.

r

**Analysis**

Appellant argues that the trial court erred in failing to suppress the results of his blood draw.

**A. Standard of Review**

[1] [2] [3] [4]We review a denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex.Crim.App.2008) (citing *State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App.2006)). When we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determinations of historical facts [while] reviewing] de novo the court's application of the law of search and seizure to those facts." *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State,* 214 S.W.3d 17, 24 (Tex.Crim.App.2007) (quoting *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006)). The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State,* 237 S.W.3d 720, 725 (Tex.Crim.App.2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State,* 934 S.W.2d 92, 98 (Tex.Crim.App.1996). We sustain the trial court's ruling only if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State,* 117 S.W.3d 854, 857 (Tex.Crim.App.2003).

**B. Probable Cause to Arrest**

*4 [5]In his first point of error, appellant argues that the trial court erred in denying his motion to suppress and admitting his blood test results because the State did not show probable cause for his warrantless arrest for DWI.

[6] [7]The Fourth Amendment to the United States Constitution, which is made applicable to the states by the Due Process Clause of the Fourteenth Amendment, guarantees that "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures, shall not be violated." U.S. CONST. amends. IV, XIV; *Amador v. State,* 275 S.W.3d 872, 878 (Tex.Crim.App.2009). Under the Fourth Amendment, a warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause. *Amador,* 275 S.W.3d at 878 (citing *United States v. Watson,* 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)). " 'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Id.* (citing

*Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

[8] [9] [10]A finding of probable cause requires "more than bare suspicion" but less than would justify conviction. *Id.* (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). The test for probable cause is objective, "unrelated to the subjective beliefs of the arresting officer," and "it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.* Once a defendant has carried his initial burden of producing some evidence rebutting the presumption of proper police conduct—i.e. by establishing that the seizure occurred without a warrant— the burden shifts to the State to prove that the seizure was nonetheless reasonable. *Id.*

Here, evidence at the suppression hearing indicated that Officer McCandless observed appellant commit a moving violation by failing to maintain his lane and observed appellant weaving within his lane and crossing onto the shoulder. Officer McCandless testified that he was concerned appellant's driving posed a danger to the other drivers on the roadway. When Officer McCandless pulled appellant over, he smelled a strong odor of alcohol coming from appellant's vehicle, appellant acknowledged that he had consumed alcoholic beverages, and appellant was unsteady on his feet as he complied with Officer McCandless's request that he exit the vehicle. Officer McCandless also administered a portion of the HGN test and determined that appellant was possibly intoxicated, and appellant refused to cooperate with further field sobriety testing. Given the totality of the circumstances, this evidence constituted "more than a bare suspicion" and was sufficient to warrant Officer McCandless's belief that appellant had committed the offense of DWI. *See id.*

Appellant argues that this case is similar to *State v. Mosely,* and, thus, we should reverse the trial court. However, we consider *Mosely* to be distinguishable from the present case. The trial court in *Mosely* granted the defendant's motion to suppress and its findings of fact and conclusions of law supported that ruling, which is not the case here. *See* 348 S.W.3d 435, 441 (Tex. App.– Austin 2011, pet. ref'd) ("The question we must answer is whether this record so thoroughly satisfies the State's burden of establishing that [the officer] had probable cause to arrest Mosely for DWI that the trial court's ruling to the contrary was an abuse of discretion."). Furthermore, while the court in *Mosely* concluded that evidence that Mosely had caused an accident, his breath smelled of alcohol, his eyes were bloodshot, and he had admitted to having a couple of drinks did not constitute evidence of probable cause in that case, the State here presented additional evidence establishing Officer McCandless's probable cause for arresting appellant. *See id.* at 441 (concluding State did not establish that Mosely "lacked the normal use of his mental or physical faculties" because no officer performed field sobriety

testing or "form[ed] an opinion as to whether Mosely was intoxicated"; officers did not observe slurred speech, trouble maintaining balance, or "anything else to suggest that [Mosely] was physically or mentally impaired").

**\*5** Here, as we have already stated, Officer McCandless observed appellant driving in an unsafe manner that violated at least one provision of the Transportation Code; appellant smelled strongly of alcohol and admitted that he had been drinking; and appellant was unsteady on his feet. Officer McCandless testified that the circumstances surrounding appellant's traffic stop, including the unsafe driving, the unsafe location appellant chose to pull over, and appellant's actions and speech at the time he was stopped, led him to form the opinion that appellant was intoxicated, unlike the officers in *Mosely* who testified that they did not form an opinion regarding whether Mosely was intoxicated. *See Henderson v. State,* 29 S.W.3d 616, 622 (Tex.App.–Houston [1st Dist.] 2000, pet ref'd) (concluding that officer's testimony "that an individual is intoxicated is probative evidence of intoxication."). And, unlike *Mosely,* in which officers did not administer field sobriety tests, appellant failed the only portion of the field sobriety testing to which he submitted, refused to allow Officer McCandless to complete the field sobriety testing, and refused to provide a breath or blood sample. *See* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 2011) ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial."); *Bartlett v. State,* 270 S.W.3d 147, 153 (Tex.Crim.App.2008) (observing that defendant's refusal to submit to breath test is admissible under Transportation Code section 724.061 as tending to show defendant's consciousness of guilt). Thus, we conclude that *Mosely* is distinguishable from the present case.

We cannot conclude that the trial court abused its discretion in denying appellant's motion to suppress on this ground. We overrule appellant's first point of error.

### C. Warrantless Blood Draw

In his second point of error, appellant argues that the warrantless taking of his blood sample violated his Fourth Amendment rights by requiring him to submit to a blood test without his consent and without other justification for the search.

### 1. Was this complaint preserved?

[11]The State argues, both in its original brief and in its response to appellant's motion for rehearing, that appellant did not preserve this complaint for consideration on appeal.

[12]To preserve a complaint for appellate review, Texas Rule of Appellate Procedure 33.1 requires that: (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial court either ruled on the request, objection, or motion or refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Geuder v. State,* 115 S.W.3d 11, 13 (Tex.Crim.App.2003). If a party fails to properly object to errors at trial, even constitutional errors can be forfeited. *Clark v. State,* 365 S.W.3d 333, 339 (Tex.Crim.App.2012). We should not address the merits of forfeited errors on appeal. *Wilson v. State,* 311 S.W.3d 452, 473–74 (Tex.Crim.App.2010) (quoting *Ford v. State,* 305 S.W.3d 530, 532–33 (Tex.Crim.App.2009)).

At trial, appellant filed a general motion to suppress that did not specifically mention the blood draw but argued generally that "[t]he acquisition of [the State's] evidence was not pursuant to a search warrant, was absent exigent circumstances, and made without probable cause to believe the Accused was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed."

Appellant's attorney also objected, on the record at the suppression hearing, to the State's failure to obtain a warrant "for the blood taking under the Statute 725, I believe it is, 12(b). There is no authority for the officer to take the blood of my client without a warrant, and that is what he did in this case." Appellant's attorney also argued that Officer McCandless "didn't follow the statutory authority that required him to in this particular case to have a warrant before he withdrew the blood from my client." Appellant asked the trial court to suppress "any aspects of a blood test in this case."

The State responded that Transportation Code section 724.012 was the controlling authority in this case and that it did not require that a search warrant be obtained if one of the listed criteria was met. Appellant responded by asserting another objection:

> Therefore, it will be the Constitution of the United States as well as the statutory laws of the State of Texas on the search and seizure law; and I don't believe that the State has properly followed the law when they withdrew the blood here and the statutory and the constitutional law and case law regarding withdrawal of blood with a warrant. They didn't obtain a warrant. This is a warrantless search while the person was in custody under arrest and while the person also invoked his right to counsel; and therefore, a mandatory

t

warrant would be the only way that they could withdraw blood in this case.

**\*6** Appellant complains on appeal that the warrantless taking of his blood sample violated his Fourth Amendment rights. We conclude that his objection that the statute relied upon by the State did not provide "authority for the officer to take the blood of my client without a warrant" and his objection based on "the Constitution of the United States as well as the statutory laws of the State of Texas on the search and seizure law" for obtaining evidence without a warrant preserved this complaint for our review. These objections were sufficient to put the trial court on notice that appellant was complaining that his Fourth Amendment rights against unreasonable search and seizure were violated by the warrantless taking of his blood sample.

[13]However, appellant also argues, in part of his second point of error, that Transportation Code section 724.012(b) is itself unconstitutional because it "cannot authorize what the Constitution forbids." He did not argue in the trial court that the statute itself was unconstitutional. He complained only that the taking of his blood violated his Fourth Amendment rights by requiring him to submit to a warrantless blood test without adequate consent under the Fourth Amendment. Thus, he did not preserve his complaint regarding the constitutionality of the statute.[3] *See* TEX. R. APP. P. 33.1.

Accordingly, we address only appellant's complaint that the warrantless taking of his blood violated his Fourth Amendment rights.

### 2. Did the warrantless taking of appellant's blood sample violate his Fourth Amendment rights?

[14]As we recognized above, the Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV; *State v. Villarreal,* ––– S.W.3d ––––, ––––, No. PD–0306–14, 2014 WL 6734178, at *8 (Tex.Crim.App. Nov. 26, 2014). The taking of a blood specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966); *Villarreal, –––– S.W.3d at ––––, 2014 WL 6734178, at *9.*

[15]"In general, to comply with the Fourth Amendment, a search of a person pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances." *Villarreal,* ––– S.W.3d at ––––, 2014 WL 6734178, at *8; *see also Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (holding that warrantless search or seizure is per se unreasonable unless it falls under recognized exception to warrant requirement). Established exceptions to the warrant requirement include the consent exception, the exigency exception, the automobile exception, the search-incident to arrest exception, and the special-needs doctrine. *See Villarreal,* ––– S.W.3d at ––––, 2014 WL 6734178, at *8 (discussing consent, automobile, search-incident-to-arrest, and special-needs exceptions); *Gore v. State,* 451 S.W.3d 182, 193–97 (Tex.App.–Houston [1st Dist.] 2014, pet. filed) (discussing exigency exception)

**\*7** [16]Here, it is undisputed that appellant's blood sample was taken without a warrant. However, the State argues that Officer McCandless complied with the mandatory blood draw statute. Thus, we construe its argument as asserting that the consent exception applies because appellant's blood sample was taken pursuant to Texas' implied consent/mandatory blood draw statutory scheme, or alternatively, that the mandatory blood draw statute itself constitutes an exception to the warrant requirement.

The Transportation Code contains a provision establishing implied consent to the taking of a blood or breath specimen for all drivers arrested on suspicion of DWI:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place ... the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

TEX. TRANSP. CODE ANN. § 724.011(a) (Vernon 2011); *Villarreal,* –––S.W.3d at ––––, 2014 WL 6734178, at *6. This provision is "modified by section 724.013, which establishes a right to refuse to provide a breath or blood sample in routine DWI cases." TEX. TRANSP. CODE ANN. § 724.013 (Vernon 2011) (providing that "a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer"); *Villarreal,* ––– S.W.3d at ––––, 2014 WL 6734178, at *6.

However, the right to refuse is not absolute because section 724.012(b) establishes that when certain aggravating factors are present during a DWI stop, an officer is required to obtain a specimen even if the suspect refuses. TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 2011); *Villarreal,* ––– S.W.3d at ––––, 2014 WL 6734178, at *6. Specifically, section 724.012(b)(3)(B) provides that a peace officer "shall require the taking of a specimen of the person's breath or blood" if the arrest is

for an offense "involving the operation of a motor vehicle ... and the person refuses the officer's request to submit to the taking of a specimen voluntarily" and if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person ... on two or more occasions, has been previously convicted of ... an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code...." TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B); *Villarreal,* ––– S.W.3d at –––, 2014 WL 6734178, at \*7.

In our original opinion, we applied the Court of Criminal Appeals' precedents and held that the implied consent statute implied appellant's consent to the blood sample, and thus, his Fourth Amendment rights were not violated here. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973) (holding that search conducted pursuant to consent is recognized exception to warrant requirement); *Beeman v. State,* 86 S.W.3d 613, 615 (Tex.Crim.App.2002) (en banc) (stating, in dicta, that implied consent law "implies a suspect's consent to a search in certain instances" and that such consent was important "when there is no search warrant, since it is another method of conducting a constitutionally valid search").

However, while this case has been pending on direct appeal, the Court of Criminal Appeals considered the question of whether a warrantless search of a DWI suspect's blood conducted pursuant to section 724.012(b) complied with Fourth Amendment requirements in *State v. Villarreal,* ––– S.W.3d at ––– – –––,2014 WL 6734178, at \*6–8. The State argued in part that the taking of Villarreal's blood sample was "categorically reasonable" under "the consent exception [to the warrant requirement], applicable in the form of a prior waiver through implied consent."[4] *Id.* at –––, at \*10. The State asserted that, "in light of the existence of the implied-consent and mandatory-blood-draw provisions [of the Transportation Code,] a driver 'impliedly agrees ahead of time that, in exchange for the privilege of driving on our roads, he is willing to waive the right to a warrant in [the limited circumstances set out in the mandatory-blood-draw provisions].' " *Id.* at –––, at \*11.

**\*8** The Court of Criminal Appeals rejected this argument. *Id.* It held that, "to be valid for Fourth Amendment purposes, consent must be freely and voluntarily given based on the totality of the circumstances, and must not have been revoked or withdrawn at the time of the search." *Id.* (citing *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48, and *Florida v. Jimeno,* 500 U.S. 248, 252, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991)). The court cited cases from several other jurisdictions that have recently considered this issue and have rejected the proposition that a DWI suspect waives his Fourth Amendment rights through implied consent. *Id.* at –––, at \*13–14. It also "observe[d] that almost all of the Texas courts of appeals that have considered such challenges to

Texas's statutory scheme have reached that same conclusion." *Id.* at –––, at \*13; *see also Gore,* 451 S.W.3d at 193 (holding that implied consent/mandatory blood draw statutes as applied to defendant whose blood was drawn without warrant or another exception to warrant requirement violated Fourth Amendment in part because "implied consent that cannot be withdrawn does not meet the requirements for voluntary consent under the Fourth Amendment"); *State v. Anderson,* 445 S.W.3d 895, 908 (Tex.App.–Beaumont 2014, no pet.) (concluding that section 724.012(b) "does not constitute an exception to the Fourth Amendment's warrant requirement"); *Aviles v. State,* 443 S.W.3d 291, 294 (Tex.App.–San Antonio 2014, pet. filed) (op. on remand) (holding same); *Forsyth v. State,* 438 S.W.3d 216, 222–23 (Tex.App.–Eastland 2014, pet. ref'd) (holding that implied consent under Transportation Code is not equivalent to voluntary consent for Fourth Amendment purposes).

The Court of Criminal Appeals in *Villarreal* stated, "We agree with these courts' assessments that, in the context of a nonconsensual, warrantless bodily search of a person suspected of criminal activity, a statute providing for irrevocable implied consent cannot supply the type of voluntary consent necessary to establish an exception to the Fourth Amendment warrant requirement." ––– S.W.3d at –––, 2014 WL 6734178, at \*14. It concluded that "implied consent that has been withdrawn or revoked by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires." *Id.* at –––, at \*11.

Finally, the *Villarreal* court rejected the argument that the mandatory blood draw statute itself constituted an exception to the warrant requirement. It reaffirmed the Supreme Court's determination that, "in the absence of a search warrant, a 'search of the person is reasonable only if it falls within a recognized exception' to the warrant requirement." *Id.* at –––, –––, at \*8, 17(quoting *Missouri v. McNeely,* ––– U.S. –––, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013)). The majority in *Villarreal* rejected the dissenting justice's opinion that "a warrantless, nonconsensual blood draw conducted pursuant to provisions in the Transportation Code should be upheld as generally reasonable in light of the Legislature's clear intent to except such a search from the warrant requirement." *Id.* at –––, at \*18. In reaching its conclusion, the *Villarreal* court relied in part on the recent Supreme Court opinion in *McNeely.*

"*McNeely* reaffirmed the principle that a compelled physical intrusion beneath the skin to obtain evidence in a criminal investigation implicates significant privacy interests, and this privacy interest is not automatically diminished simply because an individual is suspected of a serious DWI offense." *Id.* (citing *McNeely,* 133 S.Ct. at 1558). *McNeely* also held that " 'the general importance of the government's interest in [curbing DWI offenses] does not justify departing from the warrant requirement

without a showing' that some established exception, such as exigency, applies." *Id.* (quoting *McNeely,* 133 S.Ct. at 1565). The Court of Criminal Appeals concluded:

> [A]lthough we acknowledge the magnitude of the drunk driving problem in Texas and the government's legitimate and substantial interest in curbing that problem, we see no compelling need on the part of law enforcement to undertake to solve this problem through warrantless, nonconsensual searches of suspects' blood. This is particularly so in light of the fact that warrants for such blood testing are often readily available, thereby providing the "traditional justification that a warrant provides." The marginal benefit to law enforcement in combating Texas's drunk-driving problem through warrantless searches is generally outweighed by an individual's substantial privacy interest here.

**\*9** *Id.*(internal citations omitted) (quoting *McNeely,* 133 S.Ct. at 1559).

Here, it is undisputed that Officer McCandless did not obtain a warrant. Furthermore, appellant refused to provide a breath or blood specimen after Officer McCandless had arrested him on suspicion of DWI, and he refused to sign the statutory warnings that Officer McCandless had provided to him regarding the consequences of his failure to provide a specimen. Under the totality of the circumstances, appellant had revoked or withdrawn any implied consent to the blood draw at the time of the search. Thus, we conclude that appellant did not provide consent consistent with the requirements of the Fourth Amendment. *See Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48; *Villarreal,* ——S.W.3d at ——, ——, 2014 WL 6734178, at \*11, 14; *Gore,* 451 S.W.3d at 193.

Furthermore, we conclude that the warrantless taking of appellant's blood sample pursuant to the implied consent/mandatory blood draw statutory scheme did not satisfy the requirements of the Fourth Amendment without a showing that some established exception to the warrant requirement applied. *See Villarreal,* —— S.W.3d ——, ——, 2014 WL 6734178, at \*11, 18; *Gore,* 451 S.W.3d at 193; *see also McNeely,* 133 S.Ct. at 1565 (holding that "the general importance of the government's interest in [curbing DWI offenses] does not justify departing from the warrant requirement without a showing' " that some established exception to warrant requirement applies). The State did not present evidence regarding any other exception to the warrant requirement at the suppression hearing. *See Amador v. State,* 221 S.W.3d 666, 672–73 (Tex.Crim.App.2007) (holding that once defendant establishes absence of warrant, State must prove that warrantless blood draw was reasonable under totality of circumstances); *Gore,* 451 S.W.3d at 193 (holding, where appellant withdrew any implied consent that she may have given and affirmatively refused to give consent for warrantless blood draw, that warrantless

search "may not be premised on the consent exception to the warrant requirement" and that "the State must come forth with some other recognized exception to the warrant requirement").

Accordingly, we conclude that the taking of appellant's blood sample here violated his Fourth Amendment rights, and the trial court erred in refusing to suppress the blood sample. *See Katz,* 389 U.S. at 357, 88 S.Ct. at 514; *Villarreal,* —— S.W.3d at ——, ——, 2014 WL 6734178, at \*11, 14.

### 3. Was the error in this case harmful?

[17]Because the error here violated appellant's rights under the Fourth Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* TEX. R. APP. P. 44.2(a); *Weems v. State,* 434 S.W.3d 655, 667 (Tex.App.–San Antonio 2014, pet. granted).

Here, the jury charge instructed the jurors that "intoxicated" means:

> (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
>
> **\*10** (B) *having an alcohol concentration of 0.08 or more.*

(Emphasis added). The State presented Officer McCandless's testimony regarding appellant's conduct leading up to and following his arrest as evidence of intoxication. The State also presented the testimony of the nurse who took appellant's blood sample on the night he was arrested. Finally, the State presented the testimony of Dr. Jeff Walterscheid, the assistant chief toxicologist at the Harris County Institute of Forensic Sciences. Dr. Walterscheid testified that appellant's blood sample contained .17 grams of ethanol per 100 milliliters and that this amount of alcohol was "[r]oughly double" the legal limit in Texas.

Given the testimony regarding the taking of appellant's blood sample and his toxicology results and the jury's instruction that intoxicated means, in part, "having an alcohol concentration of 0.08 or more," we cannot determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See Weems,* 434 S.W.3d at 667.

We conclude that the warrantless taking of appellant's blood sample in this case violated his Fourth Amendment rights by requiring him to submit to a blood test without a warrant or a recognized exception to the warrant requirement. We further conclude that this error was

w

harmful and accordingly remand the case for a new trial consistent with our opinion.

We sustain appellant's second point of error with respect to his complaint that the warrantless taking of his blood violated his Fourth Amendment rights.

**Conclusion**

We reverse the judgment of the trial court and remand for a new trial consistent with this opinion.

Footnotes

[1] After our original consideration of this case, the Court of Criminal Appeals decided *State v. Villarreal,* ——— S.W.3d ——— , No. PD–0306–14, 2014 WL 6734178 (Tex.Crim.App. Nov. 26, 2014) (motion for reh'g granted) and this Court decided *Gore v. State,* 451 S.W.3d 182 (Tex.App.–Houston [1st Dist.] 2014, pet. filed). We invited supplemental briefing from the parties in light of these cases, but no supplemental briefs were filed.

[2] Form THP–51 is the statutory authorization form that allows a peace officer to require that a hospital perform a mandatory blood draw. *See* TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 2011); *State v. Neesley,* 239 S.W.3d 780, 782 n. 2 (Tex.Crim.App.2007).

[3] On rehearing, appellant argues that his failure to object was excused under the "right not recognized" exception to the general rules of preservation. *See Black v. State,* 816 S.W.2d 350, 368 (Tex.Crim.App.1991) (Campbell, J., concurring) (explaining, under "right not recognized" exception, that defendant is excused from objecting if (1) claim was so novel that basis of claim was not reasonably available at time of trial, or (2) law was so well settled by Court of Criminal Appeals that objection at time of trial would have been futile). However, more recent precedent from the Court of Criminal Appeals has held that the "right not recognized" exception is inconsistent with current Texas law of error preservation. *See, e.g., Sanchez v. State,* 120 S.W.3d 359, 365–67 (Tex.Crim.App.2003). We also observe that this is not a case where the objection was insufficient or unspecific—appellant made no objection to the constitutionality of the statute in any way. *See Karenev v. State,* 281 S.W.3d 428, 434 (Tex.Crim.App.2009) (holding that facial challenge to constitutionality of statute is forfeitable right that is waived if defendant fails to raise it in trial court); *Curry v. State,* 910 S.W.2d 490, 496 (Tex.Crim.App.1995) (holding that, to preserve error, defendant must make specific, timely challenge to constitutionality of statute as applied to him).

[4] The State in *Villarreal* also argued that its search was permissible pursuant to the automobile exception, the special-needs exception, and the search-incident-to-arrest exception. *Villarreal,* ——S.W.3d at ———, 2014 WL 6734178, at *10. The Court of Criminal Appeals rejected the State's arguments on all of these grounds. *Id.* at ——— – ———, at * *10–15. However, we do not discuss the court's holdings on these grounds here because the only exception asserted by the State in the present case in the consent exception.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.